# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00539-CV

**Etan Industries, Inc. and Etan Industries, Inc., d/b/a CMA Cablevision and/or CMA Communications, Appellants**

**v.**

**Ronald Lehmann and Dana Lehmann, Appellees**

## FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT NO. 13,010, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

I respectfully dissent. By December 2002, the Lehmanns knew or should have known that Etan did not have a contractual or legal right to use Bluebonnet's easement, and had reason to believe that Etan did not have its own easement over their property. They waited to file suit until October 2005, more than two years later. Consequently, their tort claims are barred by limitations as a matter of law. Because the Lehmanns' tort claims are barred, and because I conclude the Lehmanns are not entitled to either injunctive or declaratory relief, I would dissolve the injunction and reverse the portions of the district court judgment awarding damages, declaratory relief, and attorneys' fees.

*Limitations*

The majority applies the doctrine of fraudulent concealment and holds that the Lehmanns did not actually know until July 2004 that Etan was not authorized to use the Bluebonnet easement and that the placement of the cables was, therefore, actionable. However, even construing the facts and evidence in a light most favorable to the Lehmanns with respect to their allegations of fraudulent concealment,[1] the Lehmanns' causes of action, in fact, accrued in December 2002, when they acquired knowledge of facts that, in the exercise of reasonable diligence, would lead to the discovery of the wrongful act.

It is undisputed that the Lehmanns learned that Etan had run cable along Bluebonnet's poles on the Highway 77 Property in December 2000. The Lehmanns contend that they were told, and believed, that Etan either had its own easement or had an agreement with Bluebonnet whereby it was authorized to use Bluebonnet's easement for its cable lines. However, by December 2002, (1) Bluebonnet had told the Lehmanns that Etan, while permitted to attach its cable to Bluebonnet's poles, was contractually obligated to acquire its own easements from the property owner, (2) the Lehmanns knew that Etan had failed to provide them with any proof of its having acquired its own easement, and (3) the Lehmanns had searched the Lee County records and found no record that Etan or any other entity had acquired an easement for cable lines over their property. The Lehmanns

---

[1] For the purposes of the analysis in this case, I express no opinion as to whether the discovery rule is applicable under the circumstances presented here or whether Etan's conduct constituted fraudulent concealment. Under the facts of this case, limitations has run even assuming, without deciding, that the Lehmanns have the benefit of the discovery rule and the doctrine of fraudulent concealment. *See Bordelon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983) (fraudulent concealment); *Steel v. Rhone Poulenc, Inc.*, 962 S.W.2d 613, 618 (Tex. App.—Houston [1st Dist.] 1997), *aff'd*, 997 S.W.2d 217 (Tex. 1999) (discovery rule).

were also aware in December 2002 of the *Krohn* case,[2] which held that cable companies were not permitted to "piggy-back" on electric cooperative easements. *See Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 699 (Tex. 2002) (easement that permits holder to use private property for purpose of constructing and maintaining "an electric transmission or distribution line or system" does not allow easement to be used for cable-television lines).

By December 2002, then, the Lehmanns knew or should have known of facts that, in the exercise of reasonable diligence, would have led them to the discovery that Etan did not have a contractual or legal right to use Bluebonnet's easement. The Lehmanns also had reason to believe that Etan did not have its own easement over their property.[3] Consequently, regardless of the application of either the doctrine of fraudulent concealment or the discovery rule, limitations began to run at the latest in December 2002. *See Bell v. Showa Denko, K.K.*, 899 S.W.2d 749, 754 (Tex. App.—Amarillo 1995, writ denied) (limitations period triggered when plaintiff has knowledge of facts that would cause a reasonable person to diligently make inquiry to determine his legal rights). The Lehmanns did not bring their tort claims within two years of when they accrued. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West 2008) (two-year statute of limitations applies to action for trespass or injury to property). Therefore, their tort claims are barred, and the

---

[2] Given that the Lehmanns were aware of the holding of the *Krohn* case, I do not find significant that they "did not have a copy of the decision or even know its name."

[3] A point confirmed by the Lehmanns' seeking the advice of an attorney in mid-2003.

district court's judgment should be reversed. *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 274-75 (Tex. 2004) ("Accrual of limitations is a question of law for the court.").[4]

***Declaratory Relief***

In addition, the majority errs by holding that the district court's grant of the Lehmanns' requested declaratory relief was proper. The district court made the following declarations:

> 1. Bluebonnet's electrical easement across the Highway 77 Property and the Highway 290 Property did not and does not provide Etan with a telecommunications easement or any right-of-way on, over or across those properties for the construction, installation, presence, operation or maintenance of fiber optic cable(s) or television cable(s) for television or any other communication services; and

---

[4] The Lehmanns' tort claims are barred even if, as the Lehmanns alternatively contend, the injury to their property giving rise to their tort claims is not the presence of the cable on their property, but rather the signal running through the cable. The Lehmanns argue that a new and different cause of action accrued each time a "pulsing, sporadic and intermittent" signal was transmitted down the line and that causes of action for any alleged trespasses occurring in the two-year period prior to their filing suit were not time-barred.

In *Schneider National Carriers, Inc. v. Bates*, the supreme court held that a nuisance is "permanent" if it is sufficiently constant or regular, no matter how long between occurrences, that the future impact on the property can be reasonably evaluated. 147 S.W.3d 264, 281 (Tex. 2004). A cause of action for a permanent injury accrues when the injury first occurs or is discovered. By contrast, when the future impact of the nuisance is speculative because it is so irregular or intermittent that future injury cannot be estimated with reasonable certainty, the nuisance is considered "temporary," the continuing tort doctrine applies, and the plaintiff is permitted to assert a new claim each time the nuisance occurs. *Id.* at 281. Applying this analytical framework, I would conclude that even if the trespass at issue is the signal going through the cable line rather than the presence of the cable line itself, the injury is permanent. The purpose of the cable line is to transport signals. Although each signal is itself discrete, the transmission of signals through the cable is sufficiently constant or regular that the impact on the property may be reasonably evaluated. The alleged injury here, therefore, is a permanent one, and the continuing tort doctrine does not apply.

4

> 2. No agreement between Bluebonnet and Etan provides Etan with a telecommunications easement or right-of-way on, over or across the Highway 77 Property and the Highway 290 Property.

I would hold that declaratory relief was improper because the declarations in this case add nothing to what would be implicit or express in a final judgment for the other remedies sought in the same action. *See MBM Fin. v. Woodlands Operating Co.*, 251 S.W.3d 174, 182 (Tex. App.—Beaumont 2008, no pet.); *Hageman/Fritz, Byrne, Head & Harrison, L.L.P. v. Luth*, 150 S.W.3d 617, 627 (Tex. App.—Austin 2004, no pet.); *Kenneth Leventhal & Co. v. Reeves*, 978 S.W.2d 253, 258-59 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

Regarding the Highway 77 Property, the final judgment rendered by the district court includes a finding that Etan trespassed on the property. Trespass to real property requires a showing of an unauthorized physical entry onto the plaintiff's property. *Cain v. Rust Indus. Cleaning Servs. Inc.*, 969 S.W.2d 464, 470 (Tex. App.—Texarkana 1998, writ denied). Implicit in the jury's finding that Etan trespassed is a determination that Etan was not authorized—by virtue of the Bluebonnet easement, its agreements with Bluebonnet, or otherwise—to place its cable over the Highway 77 Property. A declaration that Etan had no right to use the Bluebonnet easement adds nothing to what is implicit in the finding that Etan trespassed on the Lehmanns' property.[5]

---

[5] The majority relies on *Universal Printing Co. v. Premier Victorian Homes*, 73 S.W.3d 283 (Tex. App.—Houston [1st Dist.] 2001, pet. denied), to hold that, because Etan took the position at trial that it had the right to use Bluebonnet's easement, a declaration that Etan did not have the right to use the easement was proper and required. In *Universal Printing*, a homebuilder sued neighboring homeowners to prevent them from blocking an alley. 73 S.W.3d at 283. At issue was whether the homebuilder had a right to ingress and egress through an alley superior to the homeowners' rights to use the alley. The homeowners took the position that they owned the alley and filed affidavits of adverse possession in public records. The homeowners testified at trial that

Regarding the Highway 290 Property, the final judgment rendered by the district court includes a finding that Etan had a prescriptive easement over the property. A prescriptive easement requires open and notorious, exclusive, uninterrupted and continuous use of another's land *adverse to the owner's claim of right* for ten years. Implicit in the finding that Etan's use was "adverse" is the determination that Etan was not authorized to use the easement by virtue of the Bluebonnet easement or otherwise. A declaration that Etan did not obtain such a right from Bluebonnet is duplicative of and adds nothing to what is implicit or explicit in the prescriptive easement finding. *See Hageman/Fritz, Byrne, Head & Harrison, L.L.P.*, 150 S.W.3d at 627; *MBM Fin.*, 251 S.W.3d at 182.

Moreover, the district court's finding rendered the question of whether Etan had a right to use the Bluebonnet easement on the Highway 290 Property moot. Declaratory judgments are only appropriate when a real controversy exists between the parties and the entire controversy may be determined by the declaration. *OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.*, 234 S.W.3d 726, 745 (Tex. App.—Dallas 2007, pet. denied). In the present case, Etan claimed to have an easement by prescription over the Highway 290 property. A declaration that Etan did not obtain an easement by agreement or otherwise from Bluebonnet would not resolve the dispute

they owned the alley and did not revoke their adverse possession affidavits, which remained in the deed records. The court of appeals held that "we are persuaded by a significant matter here—the existence of the adverse possession affidavits (which were recorded in the public records)—that a declaratory action was proper." *Id.* at 297. The justification for permitting declaratory relief in *Universal Printing* does not exist here. In the present case, Etan merely presented testimony at trial in defense of a claim of trespass—that Etan believed it had an oral agreement with Bluebonnet allowing it to use Bluebonnet's easement. If a defendant's presentation of evidence to refute a plaintiff's claims were sufficient to warrant declaratory relief, declaratory relief would be proper in every contested case.

between Etan and the Lehmanns as to whether Etan had obtained a prescriptive easement over the Highway 290 Property by its own use of the property. *See Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 164 (Tex. 2004) (declaratory judgment requires justiciable controversy, and declaration sought must actually resolve controversy). Furthermore, once the district court rendered judgment that Etan had easement rights over the Highway 290 Property by virtue of the prescriptive easement, there was no further controversy regarding Etan's right to maintain the cable line on the property.

Having concluded that declaratory relief was not authorized, I would also reverse the district court's award of attorneys' fees made pursuant to the Uniform Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008).

### *Injunctive Relief*

I also disagree with the majority's affirming of the district court's award of injunctive relief. In its final judgment, the district court enjoined Etan from:

> 1. Constructing, installing, hanging, placing, attaching, allowing, commingling, operating or maintaining any additional or other fibers, sets of fibers or fiber optic cables, on any of the electric utility poles that run across the Highway 77 Property, or on any other part or portion of the Highway 77 Property;
>
> 2. Entering on, traveling across or traversing any part or portion of the Highway 77 Property; and
>
> 3. Interfering with, interrupting, disrupting, preventing, delaying or prohibiting the full, sole and exclusive use, enjoyment and possession of the Highway 77 Property by Ronald Lehmann and Dana Lehmann.

I believe the trial court abused its discretion by granting this injunctive relief. My review of the record indicates that the evidence was not sufficient to raise a fact issue on imminent harm.

7

To obtain the injunctive relief sought, the Lehmanns had the burden of presenting evidence of an imminent threat that Etan would attempt to enter their Highway 77 Property, hang cable on poles located on the property, or otherwise interfere with or disrupt their use and enjoyment of the property. *See Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986) (party seeking injunction has burden of showing that clear equity demands it); *Frey v. DeCordova Bend Estates Owners Ass'n*, 632 S.W.2d 877 (Tex. App.—Fort Worth 1982), *aff'd*, 647 S.W.2d 246 (Tex. 1983) (party seeking injunction has burden of proof).

Evidence that Etan believed, and continues to believe, that it had a right to hang its cables on poles on the Highway 77 Property is not sufficient to sustain the Lehmanns' burden of establishing imminent harm. *See Democracy Coalition v. City of Austin*, 141 S.W.3d 282, 296 (Tex. App.—Austin 2004, no pet.) (purpose of injunctive relief is to "halt wrongful acts that are threatened or in the course of accomplishment, rather than to grant relief against past actionable wrongs or to prevent the commission of wrongs not imminently threatened"). That Etan engaged in such conduct in the past is also not enough to show imminent harm. *Frey*, 647 S.W.2d at 248. The evidence at trial established that Etan removed the cable line from the Highway 77 Property before trial. Etan spent a considerable amount of money setting new poles to relocate the cable line off the Highway 77 Property and onto the state highway right-of-way on the other side of the highway. There was no evidence indicating that Etan has any intention of entering the Highway 77 Property. Thus, there is no evidence in this context of imminent harm. *See Markel v. World Flight, Inc.*, 938 S.W.2d 74, 80 (Tex. App.—San Antonio 1996, no writ) ("An injunction does not lie to

8

prevent an alleged threatened act, the commission of which is speculative and the injury from which is merely conjectural.").

### *Conclusion*

Having concluded that the Lehmanns' tort claims arising out of Etan's unauthorized placement of cable on its Highway 77 Property are barred by limitations, I would reverse the portion of the district court's judgment awarding $15,000 in damages and $1,627.35 in pre-judgment interest, and render judgment that the Lehmanns take nothing by way of those claims. Having also concluded that the Lehmanns are not entitled to declaratory relief under the circumstances of this case, I would reverse the portion of the district court judgment awarding the Lehmanns declaratory relief and attorneys' fees. Finally, since the Lehmanns failed to meet their burden of establishing imminent harm, I would dissolve the injunction.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Waldrop and Henson

Filed:   March 26, 2010

9