

# MEMORANDUM OPINION

No. 04-11-00083-CV

**SUNDANCE AT STONE OAK ASSOCIATION, INC.**,
Appellant

v.

**NORTHEAST INDEPENDENT SCHOOL DISTRICT** and Pape-Dawson Engineers, LLC,
Appellees

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-00127
Honorable Karen H. Pozza, Judge Presiding

Opinion by:  Catherine Stone, Chief Justice

Sitting:  Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice

Delivered and Filed:  May 18, 2011

AFFIRMED

This is an accelerated appeal from the trial court's interlocutory order denying Sundance

at Stone Oak Association, Inc.'s request for a temporary injunction against Northeast

Independent School District and Pape-Dawson Engineers, LLC (collectively "NEISD").  In its

sole issue, Sundance contends the trial court abused its discretion when it denied its application

for injunctive relief.  Because Sundance failed to establish that it would suffer a probable,

imminent, and irreparable injury in the absence of a temporary injunction, we affirm the trial court's order.

## BACKGROUND

The facts of this case are undisputed. Sundance is the homeowner's association for the Sundance at Stone Oak Subdivision, which is located in the Stone Oak area of San Antonio, Texas. When KB Home Lone Star LP developed the Sundance at Stone Oak Subdivision, it deeded a 6.448 acre tract of land to Sundance for the purpose of establishing a common area for the Subdivision. Sundance has yet to develop the 6.448 acre tract, but has "been looking at developing a tennis court [and] basketball court on the land." The 6.448 acre tract KB Home Lone Star LP deeded to Sundance is burdened by the Sitterle Easement, which grants NEISD an easement and right-of-way for the "86' roadway known as 'Hardy Oak'" Boulevard.

NEISD is in the process of extending Hardy Oak in order to connect it to a new elementary school that is under construction near the Sundance Subdivision.[1] The extension of Hardy Oak will cross a portion of Sundance's 6.448 acre tract. Sundance opposes the extension of Hardy Oak, asserting that the terms of the Sitterle Easement do not authorize NEISD to extend Hardy Oak across the Subdivision's proposed common area. Sundance also opposes the extension project because it will allegedly alter surface water drainage on the 6.448 acre tract, making Sundance's property susceptible to flooding.[2]

Sundance filed an application for temporary injunction to stop NEISD's extension of Hardy Oak across its 6.448 acre common area. Following a hearing on Sundance's application for injunctive relief, the trial court denied Sundance's request for a temporary injunction.

---

[1] Pape-Dawson is the civil engineer for the extension project and Yantis is the general contractor. Sundance has non-suited Yantis from the underlying litigation.

[2] Sundance has yet to experience any flooding on its property because the Hardy Oak extension project has not progressed to the stage involving the installation of the underground storm water pipes that will purportedly divert surface water drainage onto Sundance's property.

Sundance subsequently brought this appeal, claiming the trial court abused its discretion when it denied its application for injunctive relief.

### STANDARD OF REVIEW

The decision to grant or deny a temporary injunction is within the trial court's sound discretion. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). An appellate court will not reverse a trial court's decision to deny an application for a temporary injunction absent an abuse of discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Walling*, 863 S.W.2d at 58. "The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion." *Butnaru*, 84 S.W.3d at 204. We review the evidence in the light most favorable to the trial court's order and indulge reasonable inferences in its favor. *EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 696 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

### TEMPORARY INJUNCTIONS

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru*, 84 S.W.3d at 204. The term "status quo" is defined as the last, actual, peaceable, non-contested status that preceded the pending controversy. *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004). A temporary injunction is an extraordinary remedy and will not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204.

To secure a temporary injunction, an applicant must plead and prove three elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* "A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it." *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 220 (Tex. App.—Fort Worth 2009, pet. denied), *cert.*

*denied*, 120 S.Ct. 2061 (2010). "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204. "That is, the applicant has to establish there is no adequate remedy at law for damages." *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 235 (Tex. App.—Houston [1st Dist.] 2003, no pet.). "An existing remedy is adequate if it 'is as complete and as practical and efficient to the ends of justice and its prompt administration as is equitable relief.'" *Blackthorne v. Bellush*, 61 S.W.3d 439, 444 (Tex. App.—San Antonio 2001, no pet.) (citation omitted).

## DISCUSSION

We focus our analysis on the third element of the temporary injunction test, which requires the applicant to prove a probable, imminent, and irreparable injury. *See Butnaru*, 84 S.W.3d at 204. Sundance claims a temporary injunction is needed: (1) to prevent the possible flooding of its property; and (2) to prevent it from incurring additional costs to develop the recreational improvements it is considering for the 6.448 acre tract. Sundance's reasons for requesting a temporary injunction, however, are insufficient to sustain its burden of establishing probable, imminent, and irreparable harm.

### A. Flooding

Sundance argues an injunction is necessary because the underground storm water pipes that contractors intend to install as part of the Hardy Oak extension project will make Sundance's property susceptible to flooding at some point in the future. At the temporary injunction hearing, Sundance proffered David Quebedeaux, a licensed engineer, to testify about the alleged flooding. Quebedeaux opined that the extension project will alter the drainage patterns on the 6.448 acre tract. He stated that the combination of altered drainage patterns and future developments on the

adjoining tracts could cause Sundance's property to flood from the diversion of surface water onto Sundance's property. Quebedeaux, however, conceded at the hearing that he had no idea when, if ever, the subject underground storm water pipes would be "connected to some other construction project" that would result in a flooding event. Quebedeaux's testimony thus establishes only a fear of possible injury by Sundance, and such theoretical possibility of harm is insufficient to support the issuance of a temporary injunction. *See Frey v. DeCordova Bend Estates Owners Ass'n*, 647 S.W.2d 246, 248 (Tex. 1983) ("[F]ear or apprehension of the possibility of injury alone is not a basis for injunctive relief."); *Tex. Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 908 (Tex. App.—Austin 2009, no pet.) ("Establishing probable, imminent, and irreparable injury requires proof of an actual threatened injury, as opposed to a speculative or purely conjectural one.").

## B. Increased Construction Costs

Sundance argues an injunction is necessary because it will incur significantly higher costs to develop the recreational improvements it is considering making on the 6.448 acre tract if the extension project continues. In support of this contention, Sundance relies on the testimony of its president, Robert Colunga, showing that Sundance has "been looking at developing a tennis court [and] basketball court" on the 6.448 acre tract. According to Colunga's testimony, the diversion of excess surface water onto the tract due to the extension project "will double [the] cost" of Sundance's proposed improvements. Colunga's testimony, however, confirms that any harm Sundance suffers as a result of the Hardy Oak extension project is not irreparable, but capable of being remedied by a monetary damage award at the conclusion of a trial. *See McGlothlin v. Kliebert*, 672 S.W.2d 231, 232 (Tex. 1984) ("A temporary injunction will not be granted where there is a plain and adequate remedy at law.").

## CONCLUSION

Viewing the evidence in the light most favorable to the trial court's order, we conclude Sundance has failed to sustain its burden of establishing probable, imminent, and irreparable injury in the absence of a temporary injunction. Accordingly, we hold the trial court did not abuse its discretion in denying Sundance's application for a temporary injunction. We therefore resolve Sundance's sole issue against it and affirm the trial court's order denying Sundance's request for a temporary injunction.

Catherine Stone, Chief Justice